IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AMY LOISEAU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:19-cv-01115-ELR |
| | ) | |
| THOMPSON, O'BRIEN, KEMP & | ) | |
| NASUTI, P.C. and AARON | ) | |
| KAPPLER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE

COME NOW Defendants Thompson, O'Brien, Kemp & Nasuti ("TOKN") and Aaron Kappler ("Kappler") (collectively, "Defendants"), and respectfully submit this Memorandum of Law in support of their Motion for Sanctions Due to Spoliation of Evidence based on Plaintiff's knowing and intentional failure to preserve relevant evidence.  In support of hereof, Defendants show the following:

## I.      BACKGROUND

### A.      The Gwinnett County Action.

Plaintiff was previously employed by TOKN from January 5, 2015 through March 30, 2018, as a paralegal in the firm's Collections Practice Group. (Complaint, Doc. 1 (hereinafter, "Compl.") ¶ 42).  As a member of Collections

Practice Group, Plaintiff was under the direct supervision of Adam L. Cleveland ("Cleveland"), the supervising attorney of the practice group. (Deposition of Amy Loiseau, (hereinafter "Pl's Dep.") 67:10-12).[1]  On October 6, 2017, Cleveland was terminated from TOKN. (Deposition of Adam L. Cleveland (hereinafter, "Cleveland's Dep."), 25:3-5).[2]  He subsequently began practicing, and continues to practice, law at Adam L. Cleveland, P.C. ("ALC P.C."). (Cleveland Dep. 9:1-14). Following Cleveland's termination, but before Plaintiff's resignation on March 30, 2018, Cleveland contacted Plaintiff on multiple occasions, seeking confidential information stored on TOKN's system, which information Plaintiff willingly provided him. (Pl.'s Dep. 89:4-9).

Plaintiff ultimately resigned from TOKN on March 30, 2018 and began working for ALC P.C. shortly thereafter. (Pl's Dep. 56:14-22; Cleveland Dep., 58:10-15).   Following Plaintiff's resignation, TOKN discovered emails from Plaintiff to Cleveland in which Plaintiff provided a number of TOKN's

---

[1] Relevant excerpts from the October 4, 2019 Deposition of Plaintiff Amy Loiseau are attached hereto as **Exhibit 1**.  Plaintiff's complete transcript is also being filed simultaneous with the filing of Defendants' Motion for Summary Judgment.

[2] Relevant excerpts from the October 3, 2019 Deposition of Plaintiff Adam L. Cleveland are attached hereto as **Exhibit 2**.  Cleveland's complete transcript is likewise being filed in connection with Defendants' Motion for Summary Judgment.

confidential documents and client contact information to Cleveland.  Accordingly, Kappler sent both Plaintiff and Cleveland a Cease & Desist Letter on May 17, 2018. (Pl. Dep. 12:19-13:10; Cleveland Dep. 214:20-215:1, Ex.'s D-30, D-31). Subsequently, after learning of the full extent of Plaintiff and Cleveland's fraud, conversion, trade secret violations, and malfeasance, TOKN ultimately filed suit against Plaintiff and Cleveland in the Superior Court of Gwinnett County on December 14, 2018 (the "Gwinnett County Action"), seeking damages resulting from violations of the Georgia Trade Secrets Act, Georgia Computer Systems Protections Act, conversion, and fraud along with punitive damages and attorneys' fees.  (Thompson, O'Brien, Kemp & Nasuti v. Adam L. Cleveland, P.C., Adam L. Cleveland, Amy M. Loiseau, Superior Court of Gwinnett County, Civil Action File No. 18-A-10679-2).[3]

**B.      Plaintiff Decides to File an FLSA Claim in Federal Court Rather than as a Counterclaim to the Gwinnett County Action.**

Plaintiff received notice of the Gwinnett County Action "fairly soon after it was filed."  (Pl's Dep. 17:11-18:11).  Shortly thereafter, Plaintiff sought an attorney to defend her in the Gwinnett County Action, and she initially spoke with and paid an attorney to represent her; however, she later elected to retain the same

---

[3] A true and accurate copy of the original Superior Court Complaint is attached hereto as **Exhibit 3**.  See also Pl's Dep. Ex. 32.

attorney Cleveland was using to represent himself in the same action (*i.e.*, William Carlisle) and, instead of filing an FLSA counterclaim in that action as she had initially intended, decided to file the instant FLSA claim in federal court. (Pl.'s Dep. 18:14-20:15, 32:11-33:18).   Plaintiff then began the process of selecting counsel for her FLSA claim and had a telephone conference with a labor and employment attorney around January 23, 2019. (Pl.'s Dep. 24:16-25:8, 28:5-15). That attorney declined to represent her due to a conflict of interest. (Pl.'s Dep. 39:1-10).

Plaintiff subsequently had a meeting with a second potential FLSA attorney, whose representation she declined (Pl's Dep. 38:17-22).    Finally, at the recommendation of Cleveland, who met Kevin Fitzpatrick at a CLE (Cleveland Dep. 22:19-23:4), Plaintiff retained her current counsel on February 13, 2019. (Pl.'s Dep. 30:18-25, Ex. D-35).[4]  The same day, Plaintiff's counsel issued a letter to TOKN informing it that Plaintiff retained his firm in connection with a wage

---

[4] While Cleveland testified he thought the CLE occurred in the early 2018 (Cleveland Dep. 22:6-26:13, 26:14-28:8), records from the Georgia Institute of Continuing Legal Education (true and correct copies of which are attached hereto as **Exhibit 4**) establish that the CLE event in question actually occurred in February 2019.   See Exhibit 4, Declaration of Custodian of Records for the Commission on Continuing Lawyer Competency at TOKN008669, 8670, showing that Cleveland and Fitzpatrick both attended the "Advanced Debt Collection" CLE on February 7, 2019.

and hour matter arising from her employment at TOKN and requesting that TOKN execute an enclosed tolling agreement. (Id., Ex. D-34).

Plaintiff ultimately filed the present lawsuit against TOKN and Kappler on March 8, 2019, alleging violations of the Fair Labor Standards Act's overtime provisions. (Compl., Doc. 1).  Specifically, Plaintiff alleged that she "regularly worked in excess of 40 hours each week" and that Defendants failed to compensate her at one-and-a-half-times her regularly hourly rate for time worked over 40 hours during each workweek. (Compl. ¶ 66).

### C.    Plaintiff Admits She Destroyed Relevant Evidence Well After She Began Anticipating Litigation Against TOKN and Kappler.

Plaintiff's deposition in this matter occurred on October 4, 2019.  Notably, Plaintiff asserted in her deposition that she actually anticipated potential litigation against TOKN *well prior to the Gwinnett County Action*.  Indeed, Plaintiff testified that she felt as if her rights under the FLSA were violated as early as 2015 (Pl.'s Dep. 50:3-5)[5] and that she had considered filing a claim before that lawsuit was commenced in December 2018, even going so far as to forward emails concerning the TOKN receptionist's attendance sheets prior to her resignation: "I forwarded all these time records to myself when I left the firm because at that time I had

---

[5] Q. "When is the first time that you felt your rights under the FLSA were violated?"  A. "In 2015."  (Pl's Dep. 50:3-5).

thought about doing something…."  (Pl.'s Dep. 35:5-8).  (See also Pl's Dep. at 35:10-11) ("And it only came up *again* after I was sued.  But there was the thought of it *before*.") (Emphasis in italics).

In light of the foregoing, Defendants' counsel questioned Plaintiff about her efforts to preserve relevant evidence at her deposition.  In this regard, when asked about her cell phone provider, Plaintiff asserted she was currently using Total Wireless. (Pl.'s Dep. 47:10-11).  She explained she previously had cell phone service through Verizon Wireless (Pl.'s Dep, 47:21-24), but had switched providers to Total Wireless, "[a]fter[she] left TOKN but before [she] was sued [by TOKN]…." (Pl's Dep., 47:14-18).  Critically, when Plaintiff switched carriers, she kept the same physical cell phone that she had prior to the change.  (Pl's Dep. 46:20-48:24).  Notably, authenticated cell phone records provided by Tracfone Wireless (doing business as Total Wireless) in response to Defendants' post-deposition subpoena (Doc. 41) demonstrate that Plaintiff switched service and activated her cell phone with Tracfone on March 13, 2019, *i.e.*, almost **immediately after** filing her lawsuit on March 8, 2019.[6]  Plaintiff admitted she lost most of the

---

[6] A true and correct copy of the Affidavit of Tracfone Wireless, Inc. and the records produced therewith are attached hereto as **Exhibit 5**.  As shown on the document Bates-labeled TOKN011900, Plaintiff's Tracfone plan has an "Activation Date" of "03/13/2019."

data that existed on her phone during the switch, as she lost access to the Verizon Cloud, a secure storage platform for Verizon users. (Pl's Dep. 48:25-49:4).  She also admitted she took **no steps** to backup any of the information that was stored in the cloud, asserting, "…I knew I was probably going to lose my cloud, but I didn't know how to back it up.  So I did not back it up." (Pl's Dep. 49:12-14).  In other words, Plaintiff *consciously took <u>no steps</u> to preserve her cell phone data* despite her keen awareness that the data would be lost if she did not back it up.

Plaintiff acknowledged that having access to the information that was stored on the Cloud would have been highly relevant to the instant case.  Indeed, Plaintiff went so far as to claim, "Believe me, if I had my cloud, it would back up everything I've said.  I would like to have my cloud." (Pl's Dep. 51:16-18).  When asked, "And because if we had your cloud, we'd have more information about your employment at TOKN, wouldn't we," Plaintiff responded, "Yes…You would have lots of text messages from me complaining about all of my overtime."  (Pl's Dep. 51:19-25).  Plaintiff reiterated the potential importance of her phone records several additional times during her deposition, and also claimed that she had a call about this case on her cell phone while driving on Peachtree Industrial Boulevard with a witness identified in her discovery responses (Alan Alderman) in 2019. (Pl's Dep. 253:14-255:3).  Unfortunately for the Defendants, who believe that

Plaintiff's cell phone records would actually refute her claims, this evidence has been destroyed.

## II.    ARGUMENT AND CITATION TO AUTHORITY

It is undisputed that Plaintiff intentionally permitted, and in fact caused, the destruction of evidence germane to the pending claims.  As such, she has plainly spoliated evidence and should be sanctioned.  Accordingly, as set forth more fully herein, Defendants request that this Court enforce a two year statute of limitations in this claim, presume that the lost information was unfavorable to Plaintiff, and/or issue an instruction to the jury that an "adverse" or negative inference may be drawn from Plaintiff's destruction of evidence.

### A.    Plaintiff Spoliated Evidence by Causing and/or Failing to Prevent the Destruction of Electronically Stored Information on her Cell Phone When She Switched Carriers.

As an initial matter, because the pending litigation involves a federal claim, federal law applies when determining whether sanctions are appropriate.  As the spoliation at issue here involved electronically stored information ("ESI"), Rule 37(e) of the Federal Rules of Civil Procedure governs the analysis.  However, because the Eleventh Circuit has not developed factors guiding the spoliation analysis, and Georgia case law is generally consistent with federal law with regard to spoliation of evidence, courts in this Circuit frequently call upon Georgia law

when deciding spoliation motions. See Flury v. Daimler Chrysler Corp., 427 F.3d 939, 945 (11th Cir. 2005); Marshall v. Dentfirst, P.C., 313 F.R.D. 691, 695 (N.D. Ga. 2016) (noting that "the considerations for evaluating whether…to impose spoliation sanctions under Eleventh Circuit case law and under Rule 37(e)…are substantially similar.")

The Eleventh Circuit defines spoliation as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Graff v. Baja Marine Corp., 310 Fed. App'x 298, 301 (11th Cir. 2009) (quoting West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2nd Cir. 1999)).[7]  "To be reasonably foreseeable, litigation must have been contemplated – mere awareness of potential liability is insufficient to trigger a duty to preserve evidence."  Kraft Reinsurance Ireland, Ltd. V. Pallets Acquisitions, LLC, 845 F. Supp. 2d 1342, 1358 (N.D. Ga. 2011).

Here, litigation was inarguably contemplated at the time Plaintiff permitted the destruction of her ESI evidence on March 13, 2019.  According to Plaintiff, she

---

[7] As one seminal decision regarding electronic discovery put it, "[O]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."  Zubulake v. UBS Warburg ("Zubulake IV"), 220 F.R.D. 212, 218 (S.D.N.Y. 2003).

believed her rights under the FLSA were violated as early as 2015, the year she was hired.  She continued to harbor the belief that her rights were violated at the time of her resignation in March 2018 when she sent the receptionist attendance records to her personal email address because she "thought about doing something", further evidence that Plaintiff not only contemplated, but was *preparing for*, eventual litigation. (Pl.'s Dep. 35:5-8).

Although Plaintiff did not actually take steps to retain counsel and file suit at either of those times, she actively sought legal recourse for what she perceived to be Defendants' violation of the FLSA once TOKN filed its lawsuit against her and Cleveland in December 2018 and communicated with a minimum of four different attorneys regarding the same.  More importantly, she actually retained an attorney to represent her in February 13, 2019, approximately a month before she both helped her attorneys draft a Complaint outlining Defendants' alleged FLSA violations and filed the suit on March 8, 2019.  **Importantly, all of the foregoing transpired *before* the March 13, 2019 activation date of her cell phone with her new provider**.  See Oil Equip. Co. Inc. v. Modern Welding Co. Inc., 661 F. App'x 646, 657 (11th Cir. 2016) (finding the plaintiff had knowledge of potential litigation where its attorney issued a demand letter two weeks before destruction of evidence).

Though Plaintiff did not take any affirmative action in the destruction of the evidence, she willfully neglected to take any steps to back up the data on her cell phone, despite having both anticipated and commenced the present lawsuit against Defendants prior to changing her cell phone provider, making her just as culpable as if she had manually deleted all the relevant information on the phone herself. See Baxley v. Hakiel Indus., Inc., 282 Ga. 312, 313 (2007) (proof of spoliation found where defendant failed to take steps to preserve video recording and allowed it to be destroyed despite being on notice of potential for litigation).  Indeed, Plaintiff admitted at her deposition that she had a "cloud and *I knew I was probably going to lose my cloud*, but I didn't know how to back it up.  So I did not back it up."  (Pl's Dep. 48:25-49:21) (emphasis added).  Accordingly, this Court should issue a finding that Plaintiff had a duty to preserve evidence, which duty she breached, and therefore engaged in the spoliation of evidence.

      **B.**       **This Court Should Sanction Plaintiff.**

Courts sitting in the Eleventh Circuit have "broad discretion" to assess an award of sanctions for discovery abuses.  Flury, 427 F.3d at 944.  A trial court may fashion sanctions up to and including the dismissal of an action, and, at the very least, infer and/or issue an instruction to the jury that a negative inference must be drawn from the Plaintiff's destruction of evidence. Id.; Am. Multi-Cinema, Inc. v.

Walker, 270 Ga. App. 314, 317 (2004).  The purpose of an award of sanctions for spoliation is "to prevent unfair prejudice to litigants and to insure the integrity of the discovery process."  Flury, 427 F.3d at 944.  The Eleventh Circuit considers the following five factors when determining the appropriate remedy for spoliation:

> (1) whether the [defendant] was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the [plaintiff] acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence [is] not excluded."

AMLI Residential Properties, Inc. v. Georgia Power Co., 293 Ga. App. 358, 361 (2008).

Here, Plaintiff's conduct is clearly sanctionable.  First, Defendants are inarguably prejudiced as a result of Plaintiff's destruction of evidence of a practical importance.  Indeed, the failure to preserve evidence creates a presumption that the evidence would have been harmful to the spoliator.[8]  By Plaintiff's own admission, the now-spoliated evidence previously contained on her cell phone and/or its cloud-based storage is highly relevant to Plaintiff's claims that she frequently performed work during her lunch breaks and/or after her departure for which she was not compensated, that she allegedly complained about working overtime, and

---

[8] See, e.g., Baxley v. Hakiel Indus., Inc., 282 Ga. 312, 313 (2007) (noting that Proof of spoliation raises a rebuttable presumption against the spoliator that the evidence favored the spoliator's opponent).

Defendants' defense that Plaintiff was compensated for all hours worked and recorded and that she *never* reported or complained about her alleged off-the-clock work.  See Brown v. Chertoff, 563 F. Supp. 2d 1372, 1379 (S.D. Ga. 2008) (holding that "courts properly focus on the relevance of destroyed evidence in determining prejudice.").  If Defendants had access to Plaintiff's cell phone activity from the time period she worked at TOKN, such information could be used by Defendants to disprove the crux of Plaintiff's claim by showing she did not work unrecorded hours, or, at the very least, that she worked far fewer unrecorded hours than she contends and in fact *never* reported or complained about the purported off-the-clock activity.  For example, her call history would likely prove whether she made personal calls while she was allegedly working through her lunch and her text message history would demonstrate whether there are actually "text messages … complaining about all of my overtime."  Because Plaintiff made the *conscious decision* to refrain from preserving any of her cell phone data from the relevant time period, Defendants have lost an opportunity to fully defend themselves against Plaintiff's allegations.

The prejudice created by Plaintiff's destruction of evidence also cannot be cured.  It is undisputed that the evidence was destroyed and cannot be retrieved. While Defendants acknowledge that other highly relevant evidence exists which

they contend refutes Plaintiff's central allegations – primarily, her self-prepared and contemporaneously reported timecards – Plaintiff's cell phone records could have provided additional highly persuasive evidence to rebut her deposition testimony, but that evidence unfortunately no longer exists.   By her own admissions, Plaintiff's cell phone data from her time at TOKN is crucial to defending against Plaintiff's allegations that she worked unreported time throughout her workday and is entitled overtime pay. See Brown, 563 F. Supp. 2d at 1380 (finding prejudice not adequately cured despite existence of other information pertaining to the content of the destroyed documents).

Further, that Plaintiff's decision to refrain from backing up her phone data stored in the Verizon Cloud was in bad faith is made clear by the *sheer timing of her actions*.  Though a showing of negligence is insufficient to establish bad faith, malice need not be present to prove a party acted in bad faith. See Oil Equip. Co. Inc., 661 F. App'x at 653.  A party's destruction of relevant evidence extends beyond mere negligence into bad faith where the loss of evidence was not "the accidental, random, or unintended dissipation of evidence by persons having no interest in its preservation," but rather an instance "where 'a party knowledgeable of litigation strategy, tactics, and policies who invokes the aid and jurisdiction of the Court and its processes ... acted unfairly to preclude the opportunity of an

adversary to be apprised of the existence of a defense to a plaintiff's claims.'"
AMLI Residential Properties, Inc., 293 Ga. App. at 363 (citing Northern Assurance
Co. v. Ware, 145 F.R.D. 281, 284 (D.Me.1993)).[9]

Here, Plaintiff activated her new service with Total Wireless on March 13,
2019, exactly one month following her decision to retain her current counsel to
represent her in the pending claim, less than a week after she filed her lawsuit, and
two days following the issuance of a Summons to Defendants.  At this point in
time, after having spoken with her counsel (in addition to three other attorneys)
and filing her Complaint against TOKN, Plaintiff – a paralegal with extensive
experience in collections-based litigation – would have been well aware that the
information stored on her phone was both germane to her allegations and that a
duty to preserve existed. See Morrison v. Veale, No. 3:14-CV-1020-TFM, 2017
WL 372980, at *7 (M.D. Ala. Jan. 25, 2017) (finding bad faith in part where
plaintiff alleged she was unaware of her duty to preserve relevant emails despite
being represented by counsel at the time of the loss of the same).  Further, Plaintiff
testified that she was *cognizant* of the fact that the transition from Verizon
Wireless to Total Wireless would result in her losing access to the Verizon Cloud,

---

[9] See Bridgestone/Firestone North America Tire, LLC v. Campbell, 258 Ga.
App. 767, 769 (2002) (finding that defendant was prejudiced where plaintiff's
destruction of evidence rendered a full defense impossible).

and, as a result, all of the data maintained in the Cloud.  Nonetheless, Plaintiff took no steps whatsoever to preserve the evidence located on the Cloud, though she could have easily done so by seeking assistance from Tracfone Wireless, an information technology specialist, or her attorneys (and/or their staff) in the present litigation, and instead made the conscious decision to allow the information to be lost.  Compare Jackson v. Haynes & Haynes, P.C., No. 2:16-CV-01297-AKK, 2017 WL 3173302, at *4 (N.D. Ala. July 26, 2017) (finding no bad faith where plaintiff made efforts to transcribe relevant information located on phone before returning phone to cellphone provider).[10]  Conveniently for Plaintiff, Defendants had no opportunity to request her call records or text messages, either directly from Plaintiff or through a third-party subpoena to Verizon Wireless, prior to the destruction of the evidence.  Indeed, Defendants were not even served in this matter until March 13, 2019, *i.e.*, the same date the data was destroyed.  (Docs. 6 & 7, proofs of service).

As Plaintiff *willfully* engaged in malfeasance by permitting the destruction of evidence she knew would be relevant to the pending claim, Defendants request that she be precluded from obtaining a third year of potential exposure and the

---

[10] See MOSAID Technologies, Inc. v. Samsung Elec. Co., Ltd., 348 F. Supp. 2d 332, 339 (D.N.J. 2004) ("When a duty to preserve is triggered, it cannot be a defense to a spoliation claim that the party inadvertently failed to place a 'litigation hold' or 'off switch' … to stop the destruction of that evidence.")

liquidated damages she is seeking under the FLSA.  Indeed, such a result would be just, as these claims rest on proof that the Defendants willfully violated her FLSA rights, which is indeed ironic in light of *her own willful destruction of evidence*. (Compl. ¶¶ 67, 69; 29 U.S.C. §§ 216(b), 255).  Here, Plaintiff destroyed over three years' worth of phone data and, as a result, three years of information Defendants could use to rebut her claims.  Defendants should therefore be entitled to an inference that the lost data would contradict Plaintiff's allegations of an alleged "willful" violation through the imposition of a two-year statute of limitation on Plaintiff's claims and denial of her request for liquidated damages.

If the Court is unwilling to entertain such a sanction, Defendants alternatively request that they be entitled to an inference and jury instruction at trial that the evidence destroyed by Plaintiff would have proven adverse to her claims.  See Fed. R. Civ. P. 37(e)(2)(B).  As explained above, Plaintiff's deliberate decision to forgo backing up any of the data on her Verizon Cloud, which data she admitted would be relevant to her claim, was predicated on bad faith.  See S.E.C. v. Goble, 682 F.3d 934, 947 (11th Cir. 2012) (noting adverse inference instruction proper only when spoliation was in bad faith).[11]  As one court has stated, "[c]ulpability may not mean evil intent, but may simply signify responsibility and control."

---

[11] See R.A. Seigel Co. v. Bowen, 246 Ga. App. 177, 181 (2000) (finding bad faith where spoliator's conduct was "reckless").

Phillip M. Adams & Assoc., L.L.C. v. Dell, Inc., 621 F. Supp. 2d 1173, 1193 (D. Utah 2009).   Plaintiff had both the responsibility to preserve the evidence and access to or control over it when it was destroyed.   Simply put, Plaintiff knew the information existed, understood the information was relevant to her claims, and *still refrained* from backing up and preserving that information prior to switching service providers.   See Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention, 2012 WL 13071495, at *18 (N.D. Ga. Mar. 14, 2012), aff'd, 489 F. App'x 425 (11th Cir. 2012) (explaining that adverse inference instruction appropriate "when speculation about destroyed… evidence is combined with some proof that relevant and crucial evidence has been destroyed…." ).   Thus, at the very least, a presumption should arise that the phone data is not nearly as beneficial to Plaintiff's claims as she testified, given her conscious decision to allow for the destruction of the information.

### III.   CONCLUSION

As a result of Plaintiff's knowing failure to preserve critical evidence even after she filed suit in this matter, it is unlikely that all of the facts will ever be truly known in this case.   By knowingly permitting the destruction of her cell phone data from the period of time in which she worked at TOKN, Plaintiff has impermissibly and unlawfully caused significant and incurable prejudice to Defendants' ability to

fully defend against Plaintiff's allegations.   Therefore, Defendants respectfully request that this Court sanction Plaintiff's intentional and bad faith spoliation of evidence by either prohibiting her request for a three-year statute of limitations and liquidated damages or, alternatively, by finding (and/or instructing the jury) that an adverse inference may be drawn from her destruction of evidence.

Respectfully submitted, this 27th day of November 2019.

/s/ John D. Bennett
John D. Bennett
Georgia Bar No. 059212
Molly K. Martin
Georgia Bar No. 386435

ELARBEE, THOMPSON, SAPP
& WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia   30303
T: (404) 659-6700
F: (404) 222-9718
bennett@elarbeethompson.com
mmartin@elarbeethompson.com
Attorneys for Defendant

## <u>CERTIFICATE OF COUNSEL</u>

Pursuant to Local Rule 7.1, N.D. Ga., the undersigned counsel certifies that this brief was prepared with Times New Roman (14 point), one of the font and point selections approved by the Court in Local Rule 5.1B, N.D. Ga.

Respectfully submitted this 27th day of November 2019.

/s/ John D. Bennett
John D. Bennett
Georgia Bar No. 059212

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AMY LOISEAU, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
|   v. | ) Civil Action No.: 1:19-cv-01115-ELR |
| | ) |
| THOMPSON, O'BRIEN, KEMP & | ) |
| NASUTI, P.C. and AARON | ) |
| KAPPLER, | ) |
| | ) |
|       Defendants. | ) |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I served a true and correct copy of the foregoing Certificate of Service of **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE** with the Clerk of Court using the CM/ECF System which will automatically send email notification of such filing to all counsel of record.

This 27th day of November, 2019.

                                        s/John D. Bennett       
                                        John D. Bennett
                                        Georgia Bar No. 059212

Elarbee, Thompson, Sapp & Wilson LLP
800 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303

(404) 659-6700
Bennett@elarbeethompson.com
mmartin@elarbeethompson.com